UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HARVEY GULF INTERNATIONAL MARINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-592** |
| **HYDRADYNE, LLC** | **SECTION: D (4)** |

### ORDER AND REASONS

Before the Court is Defendant Hydradyne, LLC's Rule 12(b)(6) Motion for Partial Dismissal.[1] Plaintiff, Harvey Gulf International Marine, LLC ("HGIM"), opposes the Motion,[2] and Hydradyne has filed a Reply.[3]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion is **GRANTED in part and DENIED in part, as moot.** The Court, however, will grant HGIM leave to amend its state court petition to address the deficiencies raised in the Motion.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This is a redhibition and breach of contract case involving the replacement of cylinders on HGIM's "NOV cranes" that are located on vessels used for deepwater operations in the Gulf of Mexico and abroad. HGIM alleges that on January 24, 2023, it placed an order with Hydradyne for the overhaul of cylinders used in the operation of its NOV cranes, the terms of which were memorialized in the Terms and Conditions of Sale Agreement (the "Sale Agreement").[4] HGIM claims that shortly after it

---

[1] R. Doc. 13.
[2] R. Doc. 18.
[3] R. Doc. 19.
[4] R. Doc. 1-2 at ¶ 8 (*citing* R. Doc. 1-2 at p. 11).

delivered its cylinders to the Hydradyne facility, the parties discovered that some of the cylinders' Original Manufacturer Equipment ("OME") was on back order, namely the cylinders' original Rod Seals, Piston Seals, Rod Wear Rings, and Piston Wear Rings (the "seals").[5] HGIM alleges that because the OME for the cylinders were on backorder, Hydradyne "replaced the cylinder's original seals," and that Hydradyne assured HGIM "that these aftermarket seals would be sufficient for HGIM's intended use of its NOV crane cylinders upon the completion of the overhaul."[6] HGIM asserts that Hydradyne delivered the overhauled cylinders to HGIM on February 16, 2023 at a cost of $120,265.35.[7]

HGIM claims that immediately upon its use of the newly overhauled cylinders it discovered that they were no longer operating properly.[8] Per the terms of the Sale Agreement, HGIM returned the cylinders to Hydradyne to allow Hydradyne to remedy the issues causing the malfunctions.[9] HGIM alleges that, despite Hydradyne's efforts to repair the cylinders, they remained inoperable.[10] HGIM asserts that when Hydradyne was unable to repair the cylinders, it sent the cylinders to Alatas Americas Inc. ("Alatas") to correct the issue.[11] HGIM alleges that upon examining the cylinders, Alatas issued a Workshop Overhaul report, wherein it determined that the seals installed by Hydradyne "were not of the same type or material of the cylinder's original seals," and that, "Hydradyne improperly installed

---

[5] R. Doc. 1-2 at ¶ 9.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 11 (*citing* R. Doc. 1-2 at p. 12).
[8] R. Doc. 1-2 at ¶ 12.
[9] *Id.* at ¶ 13.
[10] *Id.*
[11] *Id.* at ¶ 14.

Nylon seals to the cylinders, which absorbed moisture overtime [sic] in the course of the cylinders' ordinary and intended use."[12] Alatas determined that, "these improperly installed Nylon seals were too large, which in turn did not allow any room for expansion once the unwanted moisture was absorbed, causing the cylinders' rods to grab its wearbands and chatter."[13] Alatas further determined that, "the cylinders should have been fitted with seals made up of water resistant polyester resin material."[14] HGIM alleges that, "Alatas thereafter corrected Hydradyne's mistakes and completed the overhaul with the proper seals," at a cost of roughly $150,000.00.[15] HGIM claims that it informed Hydradyne of Alatas' findings on November 16, 2023, and demanded that Hydradyne "remedy its error" by paying HGIM $150,000.00 in consequential damages.[16] According to HGIM, Hydradyne denied liability for the cylinders' failure and denied HGIM's request for consequential damages.[17]

On or about February 9, 2024, HGIM filed a Verified Petition for Redhibition, Breach of Contract and Damages against Hydradyne in Louisiana state court, asserting the following causes of action under Louisiana law: (1) redhibition; (2) thing not fit for ordinary use; (3) violation of the Louisiana Unfair Trade Practices Act ("LUTPA"); and (4) breach of contract.[18] HGIM also sought treble damages in

---

[12] *Id.* at ¶¶ 15–16.
[13] *Id.* at ¶ 16.
[14] *Id.* at ¶ 17.
[15] *Id.*
[16] *Id.* at ¶ 18.
[17] *Id.* at ¶¶ 18–19.
[18] *Id.* at ¶¶ 21–59.

connection with its LUTPA claim.[19]  Hydradyne removed the matter to this Court on March 8, 2024 on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[20]

Hydradyne filed the instant Motion for Partial Dismissal on April 15, 2024, seeking the dismissal with prejudice of HGIM's request for consequential damages, HGIM's LUTPA claim, and HGIM's request for treble damages under the LUTPA.[21] Hydradyne asserts that consequential damages are expressly excluded by the terms and conditions of the Sale Agreement and by the 2011 Master Service Agreement governing the parties' business dealings (the "2011 MSA").[22]  Hydradyne contends that the Court can consider both documents because the Sale Agreement was attached to HGIM's state court Petition, the 2011 MSA is incorporated by reference into the Sale Agreement, and the 2011 MSA is central to HGIM's claims.[23] Hydradyne also argues that HGIM's Petition fails to state a valid claim under the LUTPA because its allegations sound in breach of contract and breach of warranty,[24] and further asserts that HGIM is not entitled to treble damages under the LUTPA.[25] Hydradyne asserts that these claims should be dismissed with prejudice at HGIM's cost.[26]

HGIM opposes the Motion, asserting that the limitation of liability clauses contained in the Sale Agreement and in the 2011 MSA do not apply because it has

---

[19] *Id.* at ¶¶ 49 & 53.
[20] R. Doc. 1 at Introductory Paragraph.
[21] R. Doc. 13.
[22] *Id.* at p. 1; R. Doc. 13-1 at pp. 1, 2–3, & 7–11.
[23] R. Doc. 13-1 at pp. 9–11.
[24] *Id.* at pp. 11–13.
[25] *Id.*  at pp. 13–15.
[26] *Id.* at p. 15.

alleged that Hydradyne's representations regarding the quality and performance of the seals were not true and, therefore, constitute intentional or gross fault, gross negligence, and/or a deliberate disregard of its contractual duties.[27]  HGIM claims that it has alleged more than simple negligence, and that the Petition demonstrates that Hydradyne's misrepresentations regarding the propriety of the aftermarket seals—which were made with knowledge of the seals' incompatibility and defects—constitute, at a minimum, gross negligence and a deliberate disregard of contractual duties.[28]  HGIM further asserts that it has alleged sufficient facts to show that Hydradyne's conduct amounted to unfair or deceptive trade practices prohibited by the LUTPA, and that it is entitled to treble damages under the LUTPA.[29] Alternatively, if the Court finds that Hydradyne's Motion has merit, HGIM requests leave to amend its Petition under Fed. R. Civ. P. 15(a) to address any deficiencies pointed out in the Motion.[30]

In response, Hydradyne maintains that HGIM's conclusory allegations fail to state an LUTPA claim and that the claim, as well as HGIM's request for treble damages, should be dismissed.[31]  Hydradyne also maintains that the limitation of liability clauses in the Sale Agreement and in the 2011 MSA apply and constitute valid waivers of consequential damages.[32]  Hydradyne further asserts that HGIM's "voluminous Complaint is devoid of any allegations of negligence, gross fault, gross

---

[27] R. Doc. 18 at pp. 2–3 & 5–8.
[28] *Id*. at pp. 7–8.
[29] *Id*. at pp. 8–10.
[30] *Id*. at pp. 10–11.
[31] R. Doc. 19 at pp. 2–6.
[32] *Id*. at pp. 6–7.

negligence, or deliberate disregard of its contractual duties."[33]   Accordingly, Hydradyne maintains that the Court should grant its Motion and dismiss with prejudice HGIM's request for consequential damages, its LUTPA claim, and its request for treble damages.

Thereafter, on May 31, 2024, HGIM filed a Motion for Voluntary Partial Dismissal of Cause of Action Without Prejudice, seeking to dismiss without prejudice its LUTPA claim against Hydradyne.[34]  The Court issued an Order on June 4, 2024, dismissing without prejudice HGIM's LUTPA claim.[35]  Thus, Hydradyne's request in the instant Motion for the Court to dismiss with prejudice HGIM's LUTPA claim and HGIM's request for treble damages under the LUTPA is now moot.  Accordingly, the only issue remaining before the Court is Hydradyne's request for the Court to dismiss with prejudice HGIM's request for consequential damages.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[36]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[37]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[33] *Id.* at p. 6.
[34] R. Doc. 22.
[35] R. Doc. 23.
[36] Fed. R. Civ. P. 12(b)(6).
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129, S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

liable for the misconduct alleged."[38] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[39]

In ruling on a motion to dismiss, this Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the non-moving party.[40] This Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[41] Further, "[d]ismissal is appropriate when the complaint on its face shows a bar to relief."[42] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[43]

### III. ANALYSIS

At the outset, the Court finds that it can consider the Sale Agreement entered into between the parties, as well as Alatas' report, because they were both attached as exhibits to HGIM's state court Petition, they are referenced in the Petition, and they are central to HGIM's claims in this matter.[44] The 2011 MSA, however, does not

---

[38] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (quotation marks omitted).
[39] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[40] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018) (citing *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013)).
[41] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[42] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[43] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).
[44] *Id.  See* R. Doc. 1-2 at pp. 11–12 & 13–15.

meet these three requirements.[45] While the 2011 MSA was attached to Hydradyne's Motion,[46] it is not referenced in HGIM's Petition. Hydradyne claims that the Court can consider the 2011 MSA because it is central to HGIM's claims and because HGIM submitted a copy of the Sale Agreement "and all such purchase orders are governed and operate under a Master Services Agreement entered between the parties."[47] HGIM does not address whether the 2011 MSA is properly considered by the Court under a Rule 12 analysis. While the 2011 MSA does state that, "this Agreement shall define the rights, obligations and liabilities of the Parties arising in connection with" the services provided by Hydradyne,[48] the 2011 MSA is not referenced in the Sale Agreement or in HGIM's Petition.[49] And Hydradyne fails to cite any legal authority to support its position that the Court can consider documents outside of the pleadings that do not fit within the three parameters set forth by the Fifth Circuit. As such, this Court will not consider the 2011 MSA in resolving Hydradyne's Motion for Partial Dismissal.[50]

Turning to the Sale Agreement, the parties agree that it contains a limitation of liability clause that purports to exclude consequential damages and limits Hydradyne's liability to the amount of the cylinder overhaul's cost.[51] The Sale

---

[45] *Maloney Gaming Mgmt.*, 456 Fed. Appx. at 340–41.
[46] R. Doc. 13-2.
[47] R. Doc. 13-1 at p. 2, n.3 & p. 9.
[48] R. Doc. 13-2 at p. 2.
[49] *See* R. Doc. 1-2.
[50] The Court notes, and Hydradyne seems to recognize, that the Sale Agreement and the 2011 MSA contain similar clauses that expressly exclude liability for consequential damages resulting from any alleged breach. *See* R. Doc. 1-2 at p. 11, R. Doc. 13 at p, 1, R. Doc. 13-1 at pp. 1, 2–3, & 7–11. Thus, consideration of the 2011 MSA would not change the Court's analysis.
[51] *See* R. Doc. 13-1 at pp. 3, 7 & R. Doc. 18 at pp. 1–2, 5.


Agreement provides that Hydradyne "shall not be liable to any person or company for incidental or consequential damages, injury, or commercial loss resulting from any breach of warranty and under no circumstances shall our liability exceed the contract price for the goods in question."[52] The Sale Agreement also provides that, "[t]he issuance of an order to [Hydradyne] shall constitute acceptance by customer of these herein stated terms, conditions and warranty."[53] Thus, by issuing a Purchase Order to Hydradyne for the overhaul of its cylinders,[54] HGIM effectively accepted the terms and conditions contained in the Sale Agreement, including the waiver of its right to consequential damages resulting from any breach of warranty.[55]

In diversity cases like this one, "federal courts must apply state substantive law."[56] The Fifth Circuit has recognized that, "Under Louisiana law, contracts limiting liability are generally valid and enforceable. Any waiver for intentional misconduct or gross negligence however is void."[57] To that end, Louisiana Civil Code article 2004 provides, in pertinent part, that, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party."[58] Article 2004 "has been applied to invalidate limitations

---

[52] R. Doc 1-2 at p. 11.
[53] *Id.*
[54] *Id.* at p. 12.
[55] *Id.* at p. 11.
[56] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997)).
[57] *Houston Expl. Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531 (5th Cir. 2001) (citing *Nicor Supply Ships Assocs. v. Gen. Motors Corp.*, 876 F.2d 501, 504 (5th Cir. 1989); *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 580–83 (5th Cir. 1986); La. Civ. Code art. 2004; *Sevarg Co. v. Energy Drilling Co.*, 591 So.2d 1278 (La. App. 3 Cir. 1991)).
[58] La. Civ. Code art. 2004.

on liability in contracts between commercial parties where a breach of warranty allegedly entailing gross negligence resulted in property damage and consequential damages."[59]

"Under Louisiana law, gross negligence is willful, wanton and reckless conduct that falls between intent to do wrong and ordinary negligence."[60] The Fifth Circuit has noted that "gross negligence" and "ordinary negligence" are "significantly different in degree," and that, "[g]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence."[61] The Fifth Circuit has also recognized that, "[o]ther courts have defined gross negligence as the 'entire absence of care,' the 'want of even slight care and diligence,' and the 'utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others.'"[62] "Louisiana courts have also refused to enforce contractual limitations of liability where the breaching party's conduct amounted to 'a deliberate disregard of a contractual duty.'"[63] According to the Fifth Circuit, "[m]ere inadvertence or honest mistake does not amount to gross negligence."[64]

HGIM asserts in its Opposition brief that the limitation of liability clause contained in the Sale Agreement is null and void because HGIM alleged in its Petition that Hydradyne's representations as to the quality and performance of the seals were

---

[59] *SeaTrepid Int'l, LLC v. MK Salvage Venture, LLC*, Civ. A. No. 13-51, 2013 WL 4012655, at *2 (E.D. La. Aug. 5, 2013) (Engelhardt, J.).
[60] *Houston Expl. Co.*, 269 F.3d at 531 (citing *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)).
[61] *Orthopedic & Sports Injury Clinic*, 922 F.2d at 223, n.3 (citations omitted).
[62] *Houston Expl. Co.*, 269 F.3d at 532 (quotations omitted).
[63] *SeaTrepid*, Civ. A. No. 13-51, 2013 WL 4012655 at *2 (quoting *Carriage Meat Co., Inc. v. Honeywell, Inc.*, 442 So.2d 796, 798 (La. App. 4 Cir. 1983)).
[64] *Houston Expl. Co.*, 269 F.3d at 532 (citing *Orthopedic & Sports Injury Clinic*, 922 F.2d at 224 n.3).

untrue and, therefore, constitute intentional or gross fault and/or gross negligence.[65] Construing the allegations in the Petition in the light most favorable to HGIM as the non-moving party, which this Court is bound to do in the context of a Rule 12(b)(6) motion to dismiss,[66] the Court finds that HGIM has failed to allege sufficient facts to show that Hydradyne's culpability rises beyond ordinary negligence.  In the Petition, HGIM alleges that, despite Hydradyne's "assurances to HGIM that these aftermarket seals would be sufficient for HGIM's intended use,"[67] "Alatas determined that Hydradyne improperly installed Nylon seals to the cylinders, which absorbed moisture overtime [sic] in the course of the cylinders' ordinary and intended use."[68] HGIM also alleges that, "these improperly installed Nylon seals were too large, which in turn did not allow any room for expansion once the unwanted moisture was absorbed, causing the cylinders' rods to grab its wearbands and chatter."[69]  HGIM further alleges that, "Alatas thereafter corrected Hydradyne's *mistakes* and completed the overhaul with the proper seals,"[70] that it "demanded that Hydradyne remedy its *error*,"[71] and that "Hydradyne refuted liability for the cylinders' failure,

---

[65] R. Doc. 18 at pp. 3–4.  *See Id*. at pp. 7–8 ("As the Complaint demonstrates, Hydradyne's misrepresentations regarding the propriety of the aftermarket seals for HGIM's NOV crane cylinders—which, as per the Complaint, were made with knowledge of the seals' incompatibility and defects—constitutes, at a minimum, gross negligence and a deliberate disregard of contractual duties.").
[66] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018) (citing *Toy v. Holder*, 714 F.3d 881, 883 (5th Cir. 2013)).
[67] R. Doc. 1-2 at ¶ 10.
[68] *Id*. at ¶ 16.
[69] *Id*.  *See Id*. at ¶ 20 ("As of the date of the filing of this Petition, HGIM has still not recovered the costs it incurred in rectifying the issues caused by Hydradyne's improper installation of the overly sized Nylon seals to its NOV crane cylinders.").
[70] *Id*. at ¶ 17 (emphasis added).
[71] *Id*. at ¶ 18 (emphasis added).

and ultimately denied HGIM's request to pay the amounts owed for its *errors*."[72] In its claims for redhibition and a thing not fit for ordinary use, HGIM further asserts that Hydradyne "had knowledge of the defects in the cylinders and their component parts."[73]

These allegations fail to show that Hydradyne's actions amount to "willful, wanton and reckless conduct" or the "entire absence of care."[74] Instead, HGIM's allegations suggest that Hydradyne's actions constitute ordinary negligence, mere inadvertence, or honest mistake, none of which are synonymous with gross negligence.[75] The allegations in the Petition fail to support HGIM's assertion in its Opposition brief that Hydradyne knowingly made misrepresentations about the seals,[76] as HGIM alleged that the defective seals were "improperly installed,"[77] and that Hydradyne made "mistakes" in "error,"[78] rather than knowing misrepresentations. And contrary to HGIM's assertion in its Opposition brief, HGIM did not allege in its Petition that the application of the seals "created[d] a dangerous condition for its operators, including the potential foundering of the vessel to which the overhauled crane was affixed."[79] While HGIM claims that this allegation can be found in Paragraph 16 of its Petition, that paragraph alleges only that, "Alatas

---

[72] *Id.* at ¶ 19 (emphasis added).
[73] *Id.* at ¶¶ 31 & 38.
[74] *Houston Expl. Co. v. Halliburton Energy Servs., Inc.*, 269 F.3d 528, 531–32 (5th Cir. 2001) (citations, quotations, and internal quotation marks omitted).
[75] *Id.* at 532 (citing *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220, 224 n.3 (5th Cir. 1991)).
[76] R. Doc. 18 at pp. 6–7.
[77] R. Doc. 1-2 at ¶¶ 16 & 20.
[78] *Id.* at ¶¶ 17–19.
[79] R. Doc. 18 at pp. 6–7 (*citing* R. Doc. 1-2 at ¶ 16).

determined that Hydradyne improperly installed Nylon seals to the cylinders, which absorbed moisture overtime [sic]," and that, "these improperly installed Nylon seals were too large, which in turn did not allow any room for expansion once the unwanted moisture was absorbed, causing the cylinders' rods to grab its wearbands and chatter."[80] These allegations fail to support a claim of intentional or gross conduct.

The Court therefore finds that HGIM failed to allege sufficient facts in its Petition to show that Hydradyne's conduct amounted to intentional or gross fault, gross negligence, and/or a deliberate disregard of its contractual duties. Because HGIM's allegations fail to establish that Hydradyne's culpability exceeded simple negligence, HGIM's allegations fail to establish that the limitation of liability clause contained in the Sale Agreement is null. Since that clause, which limits Hydradyne's liability for consequential damages, appears to be valid and enforceable, the Court finds that Hydradyne is entitled to dismissal of HGIM's request for consequential damages.

## IV. Leave to Amend

In its Opposition brief, HGIM requests leave to amend its Petition if the Court agrees with Hydradyne that the Petition is deficient.[81] HGIM asserts that under Fed. R. Civ. P. 15, "[l]eave to amend should be freely given."[82] While the Court will "freely give leave [to amend] when justice so requires,"[83] leave to amend "is by no means

---

[80] R. Doc. 1-2 at ¶ 16.
[81] R. Doc. 18 at pp. 10–11.
[82] *Id.* (*citing* Fed. R. Civ. P. 15(a)(2)).
[83] Fed. R. Civ. P. 15(a).

automatic."[84]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[85]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[86]

Here, there is no indication that HGIM has acted in bad faith, with a dilatory motive, or that it has caused undue delay in this matter by requesting leave to amend.  Further, HGIM has not previously amended its Petition, and Hydradyne has not alleged that granting HGIM leave to amend would cause undue prejudice.[87]  Even though HGIM has failed to explain *how* it would amend its complaint, if granted leave to do so, the Court finds it appropriate to grant HGIM's request for leave to amend its Petition to address the deficiencies regarding its request for consequential damages that were raised by Hydradyne's Motion to Dismiss.  HGIM shall have fourteen (14) days to amend its Petition *only* with respect to its request for consequential damages.  If HGIM fails to amend its Petition within that time, the Court will dismiss with prejudice HGIM's request for consequential damages in accordance with this Order and Reasons.

---

[84] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[85] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[86] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).
[87] *See* R. Doc. 19.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Hydradyne, LLC's Rule 12(b)(6) Motion for Partial Dismissal[88] is **GRANTED in part and DENIED in part, as moot**. The Motion is **DENIED as moot** to the extent that Hydradyne, LLC seeks dismissal of Harvey Gulf International Marine, LLC's claim under the Louisiana Unfair Trade Practices Act and its request for treble damages thereunder, as Harvey Gulf International Marine, LLC has voluntarily dismissed that claim.[89] The Motion is **GRANTED** to the extent that Hydradyne, LLC seeks dismissal of Harvey Gulf International Marine, LLC's request for consequential damages.

**IT IS FURTHER ORDERED,** however, that Harvey Gulf International Marine, LLC shall have **fourteen (14) days** from the date of this Order to file an amended pleading that addresses the deficiencies raised in the Motion for Partial Dismissal regarding its request for consequential damages. If Harvey Gulf International Marine, LLC fails to timely file an amended pleading, the Court will issue an order dismissing with prejudice Harvey Gulf International Marine, LLC's request for consequential damages.

New Orleans, Louisiana, October 17, 2024.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[88] R. Doc. 13.
[89] *See* R. Docs. 22 & 23.