## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HARVEY GULF INTERNATIONAL MARINE, LLC**　　　　**CIVIL ACTION**

**VERSUS**　　　　**NO. 24-592**

**HYDRADYNE, LLC**　　　　**SECTION: D (4)**

## <u>ORDER AND REASONS</u>

Before the Court is Hallite Seals Americas, LLC's Motion to Dismiss Third-Party Complaint of Hydradyne, LLC.[1]  Hydradyne, LLC ("Hydradyne") opposes the Motion,[2] and Hallite has filed a Reply.[3]

In the Motion, Hallite asserts that Hydradyne's Third-Party Complaint[4] should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Rule 12(b)(6).  Because both the Motion and the Opposition brief refer to matters beyond the Third-Party Complaint in the context of Hallite's Rule 12(b)(6) motion to dismiss,[5] the Court provided notice to the parties that the Court may convert the Motion to Dismiss to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), and it invited the parties to submit supplemental material or argument pertinent to the Motion to Dismiss.[6]  Both Hydradyne and Hallite timely submitted supplemental memoranda.[7]  Additionally, the Court held a telephone status conference on March 5, 2025, during which the parties discussed the

---

[1] R. Doc. 34.
[2] R. Doc. 37.
[3] R. Doc. 40.
[4] R. Doc. 21.
[5] *See* R. Doc. 34-1 at pp. 8 & 12; R. Doc. 37 at pp. 16–17.
[6] R. Doc. 60.
[7] R. Docs. 67 & 68.

Motion to Dismiss.[8]  As a result of that discussion, both Hydradyne and Hallite filed supplemental memoranda addressing the Court's expressed intention to convert the Motion to Dismiss into a motion for summary judgment.[9]

Hallite has represented to this Court, both in its briefing[10] and during the March 5, 2025 telephone status conference, that it has refused to engage in substantive discovery prior to a determination by the Court that it has personal jurisdiction over Hallite.  As such, the Court declines to consider any materials beyond the pleadings with respect to Hallite's Rule 12(b)(6) motion to dismiss and will not convert that portion of the Motion to Dismiss into a motion for summary judgment.  No discovery has been exchanged between Hallite and Hydradyne and, consequently, Hydradyne does not have a reasonable opportunity to present evidence to respond to the documents attached to Hallite's Motion to Dismiss.  The Court will therefore not convert any portion of the Motion to Dismiss into a motion for summary judgment.

After careful consideration of the parties' memoranda, the record, and the applicable law, the Motion to Dismiss is **GRANTED, in part, as to Hydradyne's detrimental reliance claim, and otherwise DENIED.**  The Court, however, will grant Hydradyne's request for leave to amend its state court petition to address the deficiencies raised in the Motion to Dismiss.

---

[8] R. Doc. 70.
[9] R. Docs. 71 & 72.
[10] R. Doc. 72 at p. 3.

# I.    FACTUAL AND PROCEDURAL BACKGROUND[11]

Harvey Gulf Insurance Marine, LLC ("HGIM") filed this lawsuit against Hydradyne stemming from an order placed by HGIM for Hydradyne to overhaul the cylinders used on HGIM's "NOV cranes" located on vessels used for deepwater operations in the Gulf of Mexico and abroad.[12]   The cost of the cylinder overhaul was $120,265.35.[13]   HGIM alleges that when Hydradyne discovered that some of the cylinders' Original Manufacturer Equipment ("OME") was on back order, including the original Rod Seals, Piston Seals, Rod Wear Rings, and Piston Wear Rings (the "seals"), Hydradyne replaced the cylinders' original seals with backorder seals, promising HGIM that the aftermarket seals would be sufficient for HGIM's intended use of its cylinders.[14]   HGIM alleges that the overhauled cylinders did not operate properly and that when the overhauled cylinders were sent back to Hydradyne to remedy the issue, Hydradyne was unable to render them operable.[15]   As such, HGIM hired Alatas Americas Inc. to repair the cylinders at a cost of about $150,000.[16]   HGIM alleges that Alatas determined that Hydradyne improperly installed Nylon seals to the cylinders, which absorbed moisture over time, and that the seals were too large, which caused the cylinders' rods to "grab its wearbands and chatter."[17]

---

[11] The facts and procedural history of this case were set forth in great detail in the Court's October 17, 2024 Order and Reasons (R. Doc. 41) and, for the sake of brevity, will not be repeated here.

[12] *See* R. Doc. 1-2.

[13] *Id*. at ¶ 11.

[14] *Id*. at ¶¶ 8–10.

[15] *Id*. at ¶¶ 12–13.

[16] *Id*. at ¶¶ 13–17.

[17] *Id*. at ¶ 16.

On or about February 9, 2024, HGIM sued Hydradyne in state court, asserting claims for redhibition, thing not fit for ordinary use, violations of the Louisiana Unfair Trade Practices Act ("LUTPA"), and breach of contract.[18]  HGIM seeks a rescission of the sale of the overhauled crane cylinders and a return of the purchase price, reimbursement of the reasonable expenses occasioned by the sale, including repair costs, costs of replacing the cylinders' defective component parts, past and future economic losses and lost profits and/or income, and loss of revenue from the cylinders being out of service, as well as attorney's fees and costs.[19]  Hydradyne removed the matter to this Court on March 8, 2024 on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[20]

Pertinent to the instant Motion, Hydradyne filed a Third-Party Complaint against Hallite Seals Americas, LLC ("Hallite"), the manufacturer of the seals used in the overhaul of the crane cylinders.[21]  Hydradyne alleges that when it learned the replacement OEM parts were on backorder, it notified HGIM "and HGIM made clear to Hydradyne that it did not want to wait for the backordered OEM replacement seal kits for the cylinders to come in and wanted another solution."[22]  Hydradyne asserts that it discussed the option of sending the original seal components to a custom seal manufacturer to make after-market replacement parts, and that HGIM opted for this

---

[18] *Id.* at ¶¶ 21–59.  HGIM voluntarily dismissed its LUTPA claim on May 31, 2024.  *See* R. Docs. 22 & 23.

[19] R. Doc. 1-2 at pp. 8–9.

[20] R. Doc. 1 at Introductory Paragraph.

[21] R. Doc. 21.

[22] *Id.* at p. 17, ¶ 9.  The Court notes that Hydradyne refers to "hydraulic cylinder seal kits" and "replacement seal kits" throughout its Opposition brief (R. Doc. 37) and its Answer, Affirmative Defenses, and Third Party Complaint (R. Doc. 21).  For ease of reference, however, the Court will refer to the items manufactured by Hallite as the "seals."

proposed resolution to minimize the down time of the NOV crane.[23] Hydradyne alleges in January or February of 2023, it contacted Louisiana Seals, Inc. ("Louisiana Seals") to arrange the purchase of non-OEM custom-made replacement seal components for the cylinders.[24] Hydradyne claims that, through Louisiana Seals, it arranged for the delivery of the original seal and band components to Hallite so that Hallite could evaluate the seal components and manufacture suitable and compatible replacement parts for Hydradyne to install in the cylinders.[25] Hydradyne alleges that Hallite agreed to manufacture suitable and compatible replacement parts for the cylinders and supplied the parts it manufactured to Louisiana Seals, who sold them to Hydradyne for Hydradyne's service work on the cylinders.[26] Hydradyne asserts that Hallite manufactured replacement seals and sold and delivered them to Louisiana Seals in Louisiana, which sold and delivered them to Hydradyne.[27]

While Hydradyne denies HGIM's allegations and denies all liability to HGIM for the allegedly defective seals, Hydradyne asserts that if it is held liable to HGIM for damages based on the alleged manufacturing defects and failure to perform of the Hallite-manufactured seals, then Hallite is liable to Hydradyne for these damages.[28] As such, Hydradyne asserts claims against Hallite for redhibition, breach of implied warranty of fitness for ordinary use, and detrimental reliance.[29]

---

[23] R. Doc. 21 at pp. 17–18, ¶¶ 9–10.
[24] *Id.* at p. 18, ¶ 11.
[25] *Id.*
[26] *Id.*
[27] *Id.* at ¶ 13.
[28] *Id.* at p. 20, ¶ 21.
[29] *Id.* at pp. 20–24, ¶¶ 22–38.

In the instant Motion to Dismiss, Hallite asserts that Hydradyne's Third-Party Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[30]  Hallite claims that as a Michigan limited liability company it lacks the specific contact with Louisiana required for the Court to exercise general or specific personal jurisdiction over it.[31]  Hallite also asserts that Hydradyne's redhibition claim fails because: (1) there is no sales contract between Hallite and Hydradyne to rescind; (2) there was a contract to build, rather than a contract to sell, between Hallite and Louisiana Seals; (3) Hallite manufactured the nylon seals according to specifications supplied to it; and (4) any alleged defect was apparent and obvious at the time of sale by Hallite to Louisiana Seals.[32]  Hallite further asserts that Hydradyne's claims for redhibition, breach of implied warranty, and detrimental reliance fail to state a claim because they are barred by the exclusivity provision of the Louisiana Products Liability Act (the "LPLA"), which establishes the exclusive theories of liability for manufacturers for damage caused by their products.[33]  Alternatively, Hallite asserts that Hydradyne's breach of warranty and detrimental relance claims fail because there is no contract between Hydradyne and Hallite.[34]

Hydradyne opposes the Motion, asserting that the Court can exercise specific personal jurisdiction over Hallite because Hallite has fulfilled more than 250 orders

---

[30] R. Doc. 34.

[31] *Id*. at p. 1; R. Doc. 34-1 at pp. 1 & 3–6.

[32] R. Doc. 34-1 at pp. 2 & 7–12.

[33] *Id*. at p. 2 (*quoting* La. R.S. 9:2800.52) (internal quotation marks omitted).  *See* R. Doc. 34-1 at pp. 12–14.

[34] R. Doc. 34-1 at p. 13, n.1 & p. 14, n.2.

with Louisiana Seals since 2018.[35]  Hydradyne further asserts that it has stated a valid redhibition claim against Hallite because contractual privity is not required to bring such an action, component part manufacturers can be held liable in redhibition, and economic loss claims are carved out as an exception to the LPLA's exclusivity provision.[36]  Hydradyne likewise contends that its claim for breach of the warranty of fitness for ordinary use is expressly permitted by the LPLA because it is only seeking to recover economic damages.[37]  Hydradyne further asserts that Hallite's arguments regarding its redhibition claim – namely, whether the contract between Louisiana Seals and Hallite was a contract to build or a contract to sell, whether the seals were defective because they were based upon specifications produced by Hallite, and whether any alleged defects were apparent at the time of the sale – raise questions of fact that are not appropriate for consideration on a Rule 12(b)(6) motion to dismiss.[38]  Hydradyne also asserts that, based on the facts alleged in its Third-Party Complaint, it reasonably relied on Hallite's holding itself out as an expert and Hallite's representation that it was selling  replacement parts that were functionally equivalent to the OEM seals and thus, "has clearly alleged the elements of a detrimental reliance claim under Louisiana law."[39]

In response, Hallite maintains that the Court lacks personal jurisdiction over it, asserting that its unrelated sales to Louisiana Seals are irrelevant to a specific

---

[35] R. Doc. 37 at pp. 1–2 & 6–12.
[36] *Id*. at pp. 2 & 12–14.
[37] *Id*. at pp. 2 & 19–20.
[38] *Id*. at pp. 2 & 15–18.
[39] *Id*. at pp. 2 & 20–22.

jurisdiction determination.[40]  Hallite also maintains its arguments that Hydradyne's redhibition claim should be dismissed because Hydradyne and Louisiana Seals knew or should have discovered the alleged defects at the time of the sale, and because Hallite and Louisiana Seals had a contract to build and not a contract to sell under Louisiana law.[41]  Hallite likewise maintains that the LPLA bars Hydradyne's breach of the implied warranty of fitness for ordinary use and detrimental reliance claims.[42]

## II.    LEGAL STANDARD

### A.  Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

"Personal jurisdiction, [like subject matter jurisdiction], is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"[43]  When a nonresident defendant, like Hallite,[44] moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the burden of establishing jurisdiction belongs to the plaintiff.[45]  A plaintiff, however, "need only present a prima facie case of personal jurisdiction to satisfy that burden[;] '[p]roof by a preponderance of the evidence is not required.'"[46]  Where, as here, the Court decides the matter without holding an evidentiary hearing, the Court

---

[40] R. Doc. 40 at pp. 2–3.

[41] *Id*. at pp. 4–7.

[42] *Id*. at pp. 7–8.

[43] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (second alteration in original) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382, 57 S.Ct. 273, 81 L.Ed. 289 (1937)).

[44] *See* R. Doc. 61.

[45] *Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 717 (E.D. La. 2018) (citing *Luv N' Care v. Insta-Mix, Inc.*, 438 F. 3d 465, 469 (5th Cir. 2006)).

[46] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) and quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

takes all uncontroverted allegations in the complaint as true and resolves conflicts in the plaintiff's favor.[47]  Additionally, the Court is not restricted to the pleadings and may consider affidavits, interrogatories, depositions, or any other recognized methods of discovery.[48]

Because personal jurisdiction is a "threshold ground[] for denying audience to a case on the merits," a court must address the threshold personal jurisdiction claim before reaching a claim on the merits.[49]  Therefore, to the extent Hallite asserts that Hydradyne's Third-Party Complaint should be dismissed for lack of personal jurisdiction, the Court will address this threshold issue before turning to the merits of Hallite's arguments regarding Hydradyne's redhibition, breach of warranty, and detrimental reliance claims.

## B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[50]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[47] *Halliburton*, 921 F.3d at 539 (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)); *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

[48] *Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 717 (E.D. La. 2018) (citing *Wilson*, 20 F.3d at 648). *See Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

[49] *Ruhrgas AG*, 526 U.S. at 584–85, 119 S.Ct. 1563; *accord Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231–32 (5th Cir. 2012).

[50] Fed. R. Civ. P. 12(b)(6).

[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

liable for the misconduct alleged."[52]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[53]

"When considering a motion to dismiss for failure to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff."[54] Thus, "[u]nless it appears 'beyond a doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief,' the complaint should not be dismissed for failure to state a claim, and leave to amend should be liberally granted."[55] The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[56]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[57]  Further, "In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken."[58]  A court is generally prohibited from considering information outside the pleadings, but may consider

---

[52] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937) (quotation marks omitted).

[53] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[54] *Fernandez-Montes v. Allied Pilots Ass'n*, 978 F.2d 278, 284 (5th Cir. 1993) (citation omitted).  *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) ("We accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.").

[55] *Fernandez-Montes,* 978 F.2d at 284–85 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) (emphasis in original).

[56] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[57] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[58] *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[59]

## III.    ANALYSIS

### A.  Hallite's Rule 12(b)(2) Motion

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute must confer personal jurisdiction; and (2) the exercise of jurisdiction must not exceed the boundaries of due process.[60]  Because the limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, the inquiry is simply whether this Court's exercise of jurisdiction over Hallite would offend due process.[61]

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations."[62]  As explained by the Supreme Court, "where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."[63]  Accordingly, under federal due process

---

[59] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).
[60] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).
[61] *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 547 (5th Cir. 2014).
[62] *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp. & Placement*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citing authority).
[63] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

requirements, the Court analyzes whether the nonresident defendant has certain minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[64]

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state."[65]  In contrast, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation," and requires that "the defendant's suit-related conduct . . . create a substantial connection with the forum State."[66]  As noted by the Supreme Court, "the two forms of jurisdiction address different concerns.  Whereas specific jurisdiction focuses on the relationship between a defendant's challenged conduct and the forum State, general jurisdiction focuses on the defendant's substantial presence in the State irrespective of the location of the challenged conduct."[67]

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry, considering:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the

---

[64] *Daimler AG v. Bauman*, 571 U.S. 117, 126, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014) (quotation and internal quotation marks omitted).

[65] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (citing *Int'l Shoe*, 326 U.S. at 317, 66 S.Ct. 154).

[66] *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)) (quotation and internal quotation marks omitted) (cleaned up).

[67] *Bauman*, 571 U.S. at 157, n.10, 134 S.Ct. 746 (Sotomayor, J., concurring).

> privileges of conducting activities there; (2) whether the
> plaintiff's cause of action arises out of or results from the
> defendant's forum-related contacts; and (3) whether the
> exercise of personal jurisdiction is fair and reasonable.[68]

According to the Fifth Circuit, "[i]f the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."[69] To determine whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice," or if its exercise would be "fair and reasonable," courts must examine: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."[70]

As to the "minimum contacts" prong of the analysis, the Supreme Court has held that, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[71] The Supreme Court further explained that, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State."[72] Additionally, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[73] According

---

[68] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

[69] *Seiferth*, 472 F.3d at 271 (citation omitted).

[70] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993) (citing authority).

[71] *Walden*, 571 U.S. at 284, 134 S.Ct. 1115.

[72] *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (emphasis in original).

[73] *Walden*, 571 U.S. at 285, 134 S.Ct. 1115 (citing authority).

to the Fifth Circuit, "[a] single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."[74]  The Fifth Circuit has recognized that, "[t]he 'minimum contacts' prong, for specific jurisdiction purposes, is satisfied by actions, or even just a single act, by which the non-resident defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[75]  Further, "[t]he non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state."[76]

The Supreme Court has held that merely contracting with a party located in a state does not by itself establish sufficient minimum contacts with that state.[77]  As explained by the Fifth Circuit, "it is now well settled that 'an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'"[78]  The Supreme Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'"[79]  As

---

[74] *Ruston Gas Turbines*, 9 F.3d at 419 (citing authority).

[75] *Id.* (citing authority).

[76] *Id.* (citing authority).

[77] *See Burger King*, 471 U.S. at 478–79, 105 S.Ct. 2174 (citing authority).

[78] *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222–23 (5th Cir. 2012) (quoting *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174) (emphasis in original); *accord Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 544 (5th Cir. 2019) (explaining that a contract alone is not sufficient to constitute minimum contacts).

[79] *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174 (quoting *Hoopeston Canning Co. v. Sullen*, 318 U.S. 316–17, 63 S.Ct. 602, 87 L.Ed. 777 (1943)).

such, "[i]t is these factors–prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing–that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."[80]

Here, Hallite has provided a copy of a "Sales Quote" issued by Hallite in July 2023 and a "Purchase Order" issued by Louisiana Seals in February 2023 regarding the seals at issue in this case.[81]  Notably, the Purchase Order issued in February 2023 references "QUOTE # 136778," which is the quote number listed on the July 5, 2023 Sales Quote.[82]  While neither party addresses the apparent discrepancy between the dates of these documents, Hallite seems to allege that Louisiana Seals ordered the seals and then Hallite issued its Sales Quote detailing the specifications for the custom seals.[83]  In any event, both documents show a shipping address for Louisiana Seals located in Louisiana.[84]  While the Sales Quote contains a different shipping address from the Purchase Order,[85] both addresses are located in Louisiana. Hydradyne has provided an Affidavit from James M. Nowell, Jr., the President of Louisiana Seals, stating that Louisiana Seals mailed the original seal material that it received from Hydradyne to Hallite in Michigan, and that "Hallite proposed what it represented would be functionally equivalent replacement seal kits for use in the hydraulic cylinders, and Hallite subsequently delivered the new seals kits directly to

---

[80] *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174.
[81] *See* R. Doc. 34-2 at pp. 5–11.
[82] *See Id*. at p. 11.
[83] R. Doc. 34-1 at p. 2.
[84] *Id*. at pp. 5–9 & 11.
[85] *Compare* R. Doc. 34-2. at pp. 5–9 *to* R. Doc. 34-2 at p. 11.

Louisiana Seals, in Belle Chasse, LA."[86]  Thus, the evidence before the Court shows that Louisiana Seals and Hallite had prior negotiations regarding their contract for the manufacture of replacement seals and that the contract contemplated Hallite's future purposeful contacts with Louisiana.[87]   Nowell further states in his Affidavit that before this transaction, "Hallite had done business with Louisiana Seals repeatedly, over the course of over two decades, during which Hallite repeatedly sold and delivered hydraulic parts to Louisiana Seals, in Belle Chasse, LA."[88]  According to Nowell, "Between January of 2018 and July of 2024, Hallite sold and delivered hydraulic parts to Louisiana Seals, in Louisiana, on over 250 separate occasions, totaling more than $223,297.46 worth of sales."[89]  The "Purchases by Vendor Detail" documents submitted with Nowell's Affidavit, which detail purchases from 2018 through 2024, appear to support this statement.[90]  Hallite seemingly acknowledges the sales and deliveries to Louisiana Seals, but argues that, "discussion of Hallite's other unrelated sales to Louisiana Seals is not relevant to a specific jurisdiction determination."[91]

The evidence before the Court shows that Hallite has sufficient minimum contacts with Louisiana for the Court to exercise specific personal jurisdiction, as Hallite intentionally directed its activities toward Louisiana and purposely availed itself of the privileges of conducting business  here, and Hydradyne's action against

---

[86] R. Doc. 37-2 at pp. 1–2, ¶¶ 4–5.
[87] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012).
[88] R. Doc. 37-2 at p. 2, ¶ 6.
[89] *Id*. at ¶ 8.
[90] *Id*. at pp. 3–21.
[91] R. Doc. 40 at pp. 2–3.

Hallite arises out of Hallite's contacts with Louisiana.[92]  While the contract between Louisiana Seals and Hallite does not reference "continuing and wide-reaching contacts" between them in Louisiana,[93] the evidence presented by Hydradyne supports that Hallite has not been sued in Louisiana "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" or due to the "unilateral activity of another party or a third person."[94]  Instead, Hydradyne sued Hallite because the seals that Hallite manufactured in Michigan and shipped to Louisiana allegedly caused damages in Louisiana.

Further, the evidence shows that Hallite and Louisiana Seals had a decades-long relationship involving manufacturing and shipping parts to Louisiana.  As the President of Louisiana Seals stated in his Affidavit, "Prior to this particular transaction, Hallite had done business with Louisiana Seals repeatedly, over the course of over two decades, during which Hallite repeatedly sold and delivered hydraulic parts to Louisiana Seals, in Belle Chasse, LA."[95]  As instructed by the Supreme Court, this Court must take a "highly realistic" approach to personal jurisdiction and consider the parties' actual course of dealing.[96]  With that in mind, the Court finds that the evidence presented by the parties support that Hallite purposefully established minimum contacts with Louisiana and purposefully availed itself of the privilege of conducting business in Louisiana.

---

[92] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

[93] *Burger King*, 471 U.S. at 480, 105 S.Ct. 2174.

[94] *Id.*, 471 U.S. at 475, 105 S.Ct. 2174 (internal quotation, quotation, and internal quotation marks omitted).

[95] R. Doc. 37-2 at p. 2, ¶ 6.

[96] *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174 (citation omitted).

The Court next considers whether the exercise of personal jurisdiction in this case would be fair and reasonable.  In making this determination, the Court considers: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies."[97]  Hallite has failed to present any evidence addressing these factors.  According to Ryan Webster, Hallite's Vice President of Sales and Marketing, Hallite is a Michigan limited liability company.[98]  Hydradyne points to Hallite's website and argues that, "Hallite is an international company with more than adequate resources to litigate this matter in Louisiana."[99]  While there is no evidence of the size of the company, the exhibits provided by Hydradyne focusing on the ongoing, decades-long relationship between Hallite and Louisiana Seals supports that Hallite has been in existence and conducting business for well over two decades.[100]  There is no evidence that it would be a burden for Hallite to litigate in Louisiana.

As to Louisiana's interest, the Court concurs with Hydradyne's argument that Louisiana has an interest in protecting its citizens from allegedly defective products sold to Louisiana companies and shipped to Louisiana.  Hallite has not offered any evidence or argument that Louisiana does not have an interest in seeing this matter litigated here.  The Court finds the next two factors—the plaintiff's interest in

---

[97] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993) (citing authority).
[98] R. Doc. 34-2.
[99] R. Doc. 37 at p. 11.
[100] *See* R. Doc. 37-2.  The Court declines to consider Hallite's website.

convenient and effective relief and the judicial system's interest in efficient resolution of controversies—both fall in favor of finding fundamental fairness in exercising jurisdiction over Hallite.  Hydradyne contends that it has an interest in "obtaining relief within the forum State, where [Harvey Gulf's] alleged damages were sustained, and exercising jurisdiction over Hallite in this already pending action would be the most efficient resolution of the controversy . . . ."[101]  As pointed out by Hydradyne, there is existing litigation here in Louisiana, the case filed by Harvey Gulf against Hydradyne in which Hydradyne filed its Third-Party Complaint against Hallite. Hydradyne, as both the defendant and Third-Party Plaintiff in this case, has a strong interest in resolving the entire matter within the same litigation.  To require otherwise would necessitate Hydradyne to pursue a separate action against Hallite in another forum that is unrelated to the present controversy.  The Court likewise has an interest in the efficient resolution of this case.  Piecemeal litigation, especially if proceeding in separate states, would result in increased expenses, duplicative discovery, and an inefficient use of judicial resources.  The Court therefore finds that the exercise of specific personal jurisdiction over Hallite is fair and reasonable in this case, and denies Hallite's Motion to the extent Hallite seeks dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

### B. Hallite's Rule 12(b)(6) Motion

At the outset, the Court finds that it cannot consider the Sales Quote or the Purchase Order attached to Hallite's Motion to Dismiss.[102]  Neither document was

---

[101] R. Doc. 37 at p. 11.
[102] R. Doc. 34-2 at pp. 4–11.

Case 2:24-cv-00592-WBV-KWR    Document 74    Filed 03/27/25    Page 20 of 46

attached to Hydradyne's Third-Party Complaint or referenced therein. While the documents are attached to Hallite's Motion to Dismiss and may be central to Hydradyne's claims against Hallite, the Fifth Circuit has suggested that documents outside the pleadings must also be referenced in the complaint at issue to be considered on a Rule 12(b)(6) motion to dismiss.[103]  As such, the Court will not consider the Sales Quote or the Purchase Order in resolving Hallite's Motion to Dismiss.

### 1. **Hydradyne's Redhibition Claim**

Turning to Hallite's Rule 12(b)(6) arguments, the Court first points out that in diversity cases like this one, "federal courts must apply state substantive law."[104] Under Louisiana law, "The seller warrants the buyer against redhibitory defects, or vices, in the things sold."[105]  "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.  The existence of such a defect gives a buyer the right to obtain rescission of the sale."[106]  Louisiana law further provides that, "A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer

---

[103] *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss."); *Allen v. Hays*, 812 Fed.Appx. 185, 189 ("The court may further consider documents *attached to the Rule 12(b)(6) motion* 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'") (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)) (emphasis in original).
[104] *Katrina Canal Breaches Litig.*, 495 F.3d at 206 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997)).
[105] La. Civ. Code art. 2520.
[106] *Id.*

would still have bought it but for a lesser price.  The existence of such a defect limits the right of a buyer to a reduction of the price."[107]

Hallite argues that Hydradyne's redhibition claim should be dismissed because: (1) there is no sale contract between Hallite and Hydradyne to rescind; (2) Hallite's contract with Louisiana Seals was a contract to build, not a contract to sell; (3) the seals were not defective because they were produced in accordance with specifications from Louisiana Seals; and (4) any alleged defects in the seals were known at the time of sale or should have been discovered by Louisiana Seals at the time of sale.[108]  The Court will address each argument in turn.

### a. Redhibition Claims Do Not Require Contractual Privity.

To the extent Hallite argues that Hydradyne's redhibition claim must be dismissed because there was no vendor-vendee relationship between Hallite and Hydradyne since Hallite contracted with Louisiana Seals, and because component part manufacturers cannot be held liable in redhibition,[109] these arguments lack merit.  "[T]he Louisiana Civil Code permits liability for redhibitory defects against both the seller and manufacturer(s)."[110]  As Hydradyne correctly points out,[111] Louisiana federal courts have recognized that, "[u]nder Louisiana law . . . a buyer may bring a redhibition claim against 'all sellers in the chain of sales back to the

---

[107] *Id.*
[108] R. Doc. 34-1 at p. 7.
[109] *Id.* at pp. 8–9.
[110] *Deloach Spray Foam Insulation, LLC v. Briggs & Stratton, Corp.*, 645 F. Supp. 3d 563 (W.D. La. Dec. 9, 2022) (*citing* La. Civ. Code art. 2531; Revision Comments (c) & (d) to La. Civ. Code art. 2545).
[111] R. Doc. 37 at pp. 12–13.

primary manufacturer' regardless of the buyer's privity with an upstream party."[112] Additionally, both the Eastern and Western Districts of Louisiana have held that, "Redhibition claims may also be brought by buyers against component part manufacturers."[113]   As one court explained, "the Louisiana Civil Code permits liability for redhibitory defects against both the seller and manufacturer(s)."[114] Hallite fails to address this legal authority in its Reply brief[115] even though it was cited in Hydradyne's Opposition brief. [116]   The Court therefore denies the Motion to Dismiss to the extent Hallite seeks dismissal of Hydradyne's redhibition claim on the

---

[112] *Deloach*, 645 F. Supp. 3d at 574–75 (citing *Lovell v. Blazer Boats Inc.*, 2011-1666, p.4 (La. App. 1 Cir. 10/24/12), 104 So.3d 549, 553, n.3 (*citing* Revision Comment (d) to La. Civ. Code art. 2545)).  *See 425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.*, 151 F. Supp. 3d 715, 723 (E.D. La. 2015) ("Louisiana courts have historically held that solidary liability arises among all sellers and manufacturers of the defective product in the chain of title.") (citing *Aucoin v. S. Quality Homes, LLC*, 2007-1014 (La. 2/26/08), 984 So.2d 685, 692; *Media Prod. Consultants, Inc. v. Mercedes-Benz of N. Am., Inc.*, 262 So.2d 377, 381 (1972)); *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, Civ. A. No. 10-4441, 2013 WL 990026, at *7, n.27 (E.D. La. Mar. 13, 2013) (Morgan, J.)  (quoting *Aucoin*, 2007-1014, 984 So.2d at 692–93) ("a redhibition claim does not require privity between the plaintiff and the manufacturer, because the manufacturer is liable for defects 'resulting from the original manufacture of the product.").

[113] *Deloach*, 645 F. Supp. 3d at 575 (citing *Sw. Louisiana Hosp. Ass'n v. BASF Const. Chemicals, LLC*, 947 F. Supp. 2d 661, 683 (W.D. La. 2013), *amended* (Sept. 6, 2013)) ("[I]t is clear that [plaintiff] may pursue a direct cause of action [for redhibition] against the manufacturer [of a component part].").  *See 425 Notre Dame, LLC*, 151 F. Supp. 3d at 723 (quoting *RTT Truck Repair, LLC v. Paccar, Inc.*, Civ. A. No. 09-1105, 2011 WL 865582, at *2 (W.D. La. Mar. 10, 2011) (Drell, J.)) (internal quotation marks omitted) ("[T]he manufacturer or seller of a component part may also be solidarily bound [in redhibition]."); *Howard Pardue/Pardue's Auto Repair, Inc. v. Cummins, Inc.*, Civ. A. No. 08-1677, 2009 WL 5171462, at *2 (E.D. La. Dec. 17, 2009) (Zainey, J.) ("Given that the Louisiana Supreme Court has never precluded a cause of action in redhibition against a component part manufacturer, and to the contrary has interpreted the statute liberally, this Court finds that Pardue does state a claim against Defendants in redhibition.").

[114] *Deloach*, 645 F. Supp. 3d at 576 (*citing* La. Civ. Code art. 2531; Revision Comment (c) to La. Civ. Code art. 2545 ("When the thing sold contains a redhibitory defect, the manufacturer and the seller are solidarily liable to the buyer for a return of the purchase price."); Former Comment (g) to La. Civ. Code art. 2545 ("The trial court has discretion to allow the bad faith seller and the manufacturer a credit for the buyer's use of the thing if such a credit is warranted under the facts.")).

[115] *See, generally*, R. Doc. 40.

[116] R. Doc. 37 at pp. 12–14.

basis that there is no privity of contract between Hallite and Hydradyne and on the basis that component part manufacturers cannot be held liable in redhibition.

> b. *Whether the Contract Between Hallite and Louisiana Seals Was a Contract to Sell or a Contract to Build Requires Factual Determinations Not Appropriate for Resolution on a Rule 12(b)(6) Motion to Dismiss.*

Hallite next argues that the redhibition claim must be dismissed because Hallite's contract with Louisiana Seals is a contract to build, not a contract to sell, and Louisiana courts have held that a redhibition claim fails if a contract is one to build.[117]  Hallite asserts that Louisiana courts use a three-factor test to distinguish a contract to build from a contract to sell, and that in a contract to build: (1) the buyer has some control over specifications of the object; (2) the negotiations take place before the object is constructed; and (3) the contract contemplates not only that one party will supply materials, but also that the party will furnish his skill and labor to build the desired object.[118]  Hallite claims that all three requirements are met in this case because Louisiana Seals issued a purchase order containing the specifications for the replacement seals before they were made, and Hallite supplied the materials and its skill and labor to produce the seals.[119]

Hydradyne first asserts that whether the contract between Hallite and Louisiana Seals is a contract to build or a contract to sell is a factual question that is not appropriate to consider in the context of a motion to dismiss.[120]  Hydradyne then

---

[117] R. Doc. 34-1 at pp. 10–11.
[118] *Id.* at p. 10 (quoting *425 Notre Dame*, 151 F. Supp. 3d at 724 (citing *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559, 561 (La. App. 3 Cir. 1981))).
[119] R. Doc. 34-1 at p. 10.
[120] R. Doc. 37 at p. 15.

asserts that Louisiana cases regarding contracts to build relate almost exclusively to general contractors building houses, which is distinguishable from the facts of this case.[121] Hydradyne maintains that the arrangement between Louisiana Seals and Hallite was a contract of sale, as alleged in the Third-Party Complaint, and further asserts that even if it was a contract to build the cases cited by Hallite are distinguishable.[122] Hydradyne claims that the cases cited by Hallite do not involve a situation where a manufacturer's product is purchased by a third party through an intermediary or supplier.

Hydradyne further asserts that the *Duhon* test, cited by Hallite, is not the only test used by Louisiana courts to differentiate between a contract to build and a contract to sell, and that this case involves a contract to sell under the other tests used by Louisiana courts because the object of the contract was a sale of materials – crane cylinder seals.[123] Hydradyne argues that the underlying purpose of the transaction between Louisiana Seals and Hallite was to obtain the seals, and that Hallite generated its own specifications that it claimed would be the functional equivalent of OEM seals.[124] Hydradyne claims that Louisiana Seals did not make significant changes to Hallite's specifications, as Hydradyne and Louisiana Seals relied upon Hallite's expertise in the industry.[125] Hydradyne asserts that whether the seals were produced in accordance with agreed upon specifications "must be

---

[121] *Id.* (citing authority)
[122] *Id.*
[123] *Id.* at pp. 16–17.
[124] *Id.* at p. 17.
[125] *Id.*

corroborated by more than Hallite's mere say-so to warrant dismissal of Hydradyne's Third Party Complaint at this stage of the proceeding."[126]

In response, Hallite asserts that Hydradyne does not deny that Hallite had a contract to build under the *Duhon* test and Hallite maintains that the contract was a contract to build.[127]  Hallite also maintains that it produced custom seals in accordance with the agreed upon specifications of Louisiana Seals, and that Hallite supplied the materials and its skill and labor to produce the requested seals, further supporting that it was a contract to build.[128]

As explained by another Section of this Court, "Louisiana courts have elucidated several tests to distinguish a contract of sale from a contract to build."[129] Under the "fundamental obligation test," a contract to build "involve[s] primarily the furnishing of labor and the contractor's skill in the performance of the job, rather than a mere sale of materials."[130]  In contrast, the three-factor test developed by the Louisiana Third Circuit Court of Appeal provides that in a contract to build: (1) the buyer has some control over specifications of the object; (2) the negotiations take place before the object is constructed; and (3) the contract contemplates not only that one party will supply materials, but also that the party will furnish his skill and labor to build the desired object.[131]  Louisiana courts have also applied a "value test," whereby

---

[126] *Id*. at p. 18.
[127] R. Doc. 40 at pp. 6–7.
[128] *Id*. at p. 7.
[129] *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co., Inc.*, 151 F. Supp. 3d 715, 724 (E.D. La. Dec. 16, 2015).
[130] *Id*. (quoting *Papa v. La. Metal Awning Co.*, 131 So2d 114, 117 (La. App. 2 Cir. 1961)) (internal quotation marks omitted).
[131] *Duhon v. Three Friends Homebuilders Corp.*, 396 So.2d 559, 561 (La. App. 3 Cir. 1981).

courts consider "whether the labor extended in constructing the item, or the materials incorporated therein, constitute the principal value of the contract."[132]  "If the principal value of the contract is the materials, then it is a contract of sale, however, if the principal value is the labor, then it is a contract to build."[133]  Some Louisiana courts also "pay particular attention to the extent to which the manufacturer custom designed the product for the purchaser, or whether the product was merely a stock item."[134]  According to at least one Section of this Court, "the main inquiry is the nature of the primary obligation in the contract."[135]

The Court finds that a determination regarding whether the contract between Hallite and Louisiana Seals is a contract to sell or a contract to build requires factual determinations that are not appropriate for resolution on a motion to dismiss.  These factual disputes are more appropriately resolved at the summary judgment or trial stages.  Moreover, viewing the factual allegations in the Third-Party Complaint as true and resolving any ambiguities or doubts regarding the sufficiency of the redhibition claim in favor of Hydradyne, as the Court is bound to do, the Court finds that Hydradyne has sufficiently stated a redhibition claim against Hallite.

---

[132] *First American Bankcard, Inc. v. Smart Business Technology, Inc.*, 178 F. Supp. 3d 390, 403 (E.D. La. 2016) (quoting *Alonzo v. Chifici*, 526 So.2d 237, 241 (La. App. 5 Cir. 1988)).
[133] *First American Bankcard, Inc.*, 178 F. Supp. 3d at 403 (citing *Alonzo*, 526 So.2d at 241).
[134] *ConstructionSouth, Inc. v. Fire Windows & Doors, Inc.*, Civ. A. No. 12-1258, 2013 WL 3242728, at *3 (E.D. La. June 25, 2013) (Fallon, J.) (quoting *Summerfield v. Harnischfeger Industries, Inc.*, Civ. A. No. 97-3683, 1998 WL 726080 at *4 (E.D. La. 1998) (Vance, J.) and *Poree v. Elite Elevator Services, Inc.*, 98-0032 (La. App. 4 Cir. 4/8/98), 711 So.2d 816, 818–19) (internal quotation marks omitted).
[135] *ConstructionSouth, Inc.*, Civ. A. No. 12-1258, 2013 WL 3242728 at *3.

> c. *Whether the Specification Defense Applies Requires Factual Determinations and Consideration of Evidence, Which Are Appropriate on a Rule 12(b)(6) Motion to Dismiss.*

Hallite next argues that Hydradyne's redhibition claim should be dismissed because the seals were not defective since they were produced in accordance with the specifications provided by Louisiana Seals.[136]  Hallite cites one Louisiana case to support its position that, "Louisiana courts have found redhibition claims fail when a seller provides a product that was built in exact accordance with specifications and approved descriptions."[137]  Hydradyne argues that Hallite's position raises factual questions whose eventual determination will require additional discovery and a decision by the factfinder.[138]  Hydradyne further claims that Hallite "generated its own specifications, representing these specifications to be the functional equivalent of OEM seal kits for the Hunger cylinder," and that Louisiana Seals and Hydradyne merely "relied upon Hallite's advertised expertise in the hydraulic seals industry."[139]  Hydradyne seems to assert that Hallite has failed to corroborate its assertion that the seals were produced in accordance with agreed upon specifications, and that Hydradyne's allegations in its Third-Party Complaint are sufficient to state a claim for redhibition.[140]

As Hallite correctly points out, "Louisiana courts have held that redhibition liability does not exist when a seller provides a product in accordance with a

---

[136] R. Doc. 34 at p. 11.
[137] *Id*. (citing *Conmaco, Inc. v. S. Ocean Corp.*, 581 So.2d 365, 371 (La. App. 4 Cir. 1991)).
[138] R. Doc. 37 at p. 15.
[139] *Id*. at p. 17.
[140] *Id*. at p. 18.

purchaser's plans and specifications."[141]  The Court finds, however, that the question of whether Louisiana Seals provided the seal specifications to Hallite or Hallite generated the specifications and provided them to Louisiana Seals for review is a factual question that can only be resolved based upon a review of matters outside of the pleadings.  In the Motion to Dismiss, for example, Hallite first seems to assert that it provided the specifications for the seals, asserting that it issued "a Sales Quote to Louisiana Seals containing detailed specifications for the custom seals, including but not limited to, their size and material composition," and that, "Louisiana Seals accepted the Sales Quote, and Hallite manufactured the custom products to the requested specifications."[142]  Hallite relies upon a document beyond the pleadings, namely the Sales Quote, to support this position.[143]  The Court has determined that the Sales Quote does not meet the requirements for consideration on a motion to dismiss.  Elsewhere in the Motion to Dismiss , however, Hallite seems to suggest that Louisiana Seals provided the specifications, alleging that, "Louisiana Seals ordered nylon seals to certain specifications, and Hallite manufactured the seals to the required specifications."[144]  In the Opposition brief, Hydradyne claims that Hallite generated its own specifications and represented that they would be the functional equivalent of the original seals.[145]

---

[141] *New Orleans Assets, LLC v. Carl E. Woodward, LLC*, Civ. A. Nos. 01-2171, 02-974, 2003 WL 21434888 (E.D. La. Jan. 23, 2003) (Feldman, J.) (citing *Louisiana Indus. v. Bogator, Inc.*, 605 So.2d 213, 217 (La. App. 2 Cir. 1992); *Conmaco*, 581 So.2d at 371).  *See Engineering Sales, Inc. v. A-1 Roofing & Sheet Metal Works, Inc.*, 246 So.2d 242 (La. App. 1 Cir. 1971).

[142] R. Doc. 34-1 at p. 2 (*citing* R. Doc. 34-2 at pp. 4–9).

[143] R. Doc. 34-2 at pp. 4–9.

[144] R. Doc. 34-1 at p. 11.

[145] R. Doc. 37 at pp. 15 & 17.

Based upon the foregoing arguments, the Court finds that there is a factual dispute regarding which entity created the specifications. As such, the Court is unable to make a determination in the context of Hallite's Motion to Dismiss regarding whether the specification defense applies. Additionally, Hydradyne alleges in the Third-Party Complaint that it sent the original seal and band components to Hallite "so that Hallite could evaluate the OEM seal components and manufacture suitable and compatible replacement parts for installation by Hydradyne in the Hunger cylinders," and that, "Hallite agreed to manufacture suitable and compatible replacement parts."[146] Viewing these allegations in the light most favorable to Hydradyne and resolving any ambiguities regarding the sufficiency of the redhibition claim in Hydradyne's favor, the Court finds that Hydradyne's allegations are sufficient to state a plausible redhibition claim. As such, factual disputes preclude dismissal based upon Hallite's specification defense.

> d. *Factual Questions Regarding Whether the Alleged Defects in the Seals Were Apparent or Should Have Been Discovered at the Time of the Sale Preclude Dismissal.*

Hallite next argues that Hydradyne's redhibition claim should be dismissed because a seller owes no warranty for defects that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer, and the alleged defects in the seals – their composition and size – were known and apparent to Louisiana Seals and Hydradyne at the time of the sale.[147] Hallite asserts that under Louisiana Civil Code article 2521, a seller "owes no

---

[146] R. Doc. 21 at p. 18, ¶ 11.
[147] R. Doc. 34-1 at pp. 11–12.

warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such thing."[148]  Hallite claims that a defect is considered apparent "if a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the property."[149]  Hallite points out that in this case, HGIM has alleged that the Hallite seals were defective due to their size and composition material,[150] both of which were clearly stated on the Sales Quote provided by Hallite and accepted by Louisiana Seals.[151]

In response, Hydradyne asserts that Hallite failed to corroborate its assertion that any defects were apparent at the time of the sale, and maintains that the allegations in the Third-Party Complaint are sufficient to withstand a motion to dismiss.[152]  Hydradyne argues that it alleged in its Third-Party Complaint that the defect did not initially manifest itself at the time of the sale and that, construing these allegations in the light most favorable to Hydradyne, Hydradyne has sufficiently stated a claim for redhibition against Hallite.[153]  Hydradyne offers no substantive argument in response to Hallite's position.

Louisiana Civil Code article 2521 provides that, "The seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such

---

[148] *Id.* at p. 11 (*quoting* La. Civ. Code art. 2521) (internal quotation marks omitted).
[149] R. Doc. 34-1 at p. 12 (quoting *Minton v. Acosta*, 2021-1180 (La. App. 1 Cir. 6/3/22), 343 So.3d 721, 726) (internal quotation marks omitted)
[150] R. Doc. 34-1 at p. 12 (*citing* R. Doc. 1 at ¶¶ 16–17).
[151] R. Doc. 34-1 at p. 12.
[152] R. Doc. 37 at p. 18.
[153] *Id.*

things."[154]  According to the 1993 Revision Comments to article 2521, "a defect, or vice, is redhibitory when it is hidden, that is, not apparent, nor known to the buyer. Thus, a defect is not hidden, and therefore not redhibitory, when the buyer knows of it either because it was disclosed by the seller or because the buyer discovered it by himself."[155]  The comments further clarify that, "Under this Article, the standard of diligence that must be exercised by the buyer in determining whether the thing purchased is defective is that of a prudent administrator."[156]  The comments provide that, "Under this Article the buyer must make more than a casual observation of the object; he must examine the thing to ascertain its soundness."[157]

As Hallite correctly points out, HGIM has alleged that the replacement seals installed by Hydradyne were defective because they were too large and were made of the wrong material (Nylon instead of water resistant polyester resin material).[158] The Court finds that whether the alleged defects in the seals – their size and composition – were apparent at the time of the sale from Hallite to Louisiana Seals is a question of fact that is not appropriate for resolution on a motion to dismiss.  The Court likewise finds that the question of whether the alleged defects should have been discovered by a reasonably prudent buyer requires a factual determination that is more appropriately resolved on a motion for summary judgment or at trial.  Hallite relies upon documents beyond the pleadings, namely the Sales Quote, to support its

---

[154] La. Civ. Code art. 2521.
[155] Revision Comment (b) to La. Civ. Code art. 2521.
[156] Revision Comment (c) to La. Civ. Code art. 2521 (citing *Barker v. Tangi Exterminating Co.*, 448 So.2d 690 (La. App. 1 Cir. 1984)).
[157] Revision Comment (d) to La. Civ. Code art. 2521 (citing *Matthews v. Calamari*, 411 So.2d 620 (La. App. 4 Cir. 1982); *Guillory v. Sarpy*, 177 So.2d 403 (La. App. 4 Cir. 1965)).
[158] R. Doc. 1-2 at ¶ 16.

position that the alleged defects were apparent and known to Louisiana Seals and Hydradyne at the time of the sale from Hallite to Louisiana Seals.[159]  The Court has determined that the Sales Quote does not meet the requirements for consideration on a motion to dismiss.

The Court further notes that in its Third-Party Complaint, Hydradyne asserts an affirmative defense that any defect in the seals did not exist at the time of delivery.[160]  Hydradyne also alleges that, "Hallite held itself out as an expert manufacturer of commercial hydraulic cylinder seal kits, manufactured the allegedly defective replacement seals [sic] kits . . . and sold the replacement seals [sic] kits, warranting the seal kits against redhibitory vices and defects and as suitable and functional replacements" for the seals removed by Hydradyne.[161]  Hydradyne alleges that it "relied on Hallite's expertise and had no knowledge that the replacement seals [sic] kits provided by Hallite were not suitable and functionally equivalent replacements for the Hunger OEM seals [sic] kits for HGIM's cylinders."[162]  Hydradyne further alleges that, "[a]ny redhibitory defects attributable to the Hallite-manufactured seal kits existed at the time they were delivered by" Hallite, and that, "Hydradyne made no modifications or changes to the size, type or material used by Hallite, simply installing the Hallite-manufactured custom seal kits in HGIM's Hunger cylinders."[163]  Construing the allegations in the Third-Party Complaint as

---

[159] R. Doc. 34-1 at p. 12.
[160] R. Doc. 21 at p. 4 ("Ninteenth [sic] Defense").
[161] *Id*. at p. 21, ¶ 25.
[162] *Id*. at ¶ 27.
[163] *Id*. at p. 22, ¶ 28.

true and resolving any doubts regarding the sufficiency of the redhibition claim in favor of Hydradyne, the Court finds that Hydradyne's allegations are sufficient to state a plausible redhibition claim against Hallite. Factual disputes regarding whether the alleged defects were known at the time of the sale or should have been discovered by a reasonably prudent buyer preclude dismissal on Hallite's Motion to Dismiss.

### 2. **Hydradyne's Breach of Implied Warranty of Fitness for Ordinary Use Claim**

Hallite further asserts that Hydradyne's claim for breach of the implied warranty of fitness for ordinary use should be denied because the Louisiana Products Liability Act (the "LPLA") is the exclusive theory of liability for manufacturers for damages caused by their products.[164] Hallite claims that the LPLA expressly states that, "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."[165] Hallite asserts that, based on this unequivocal statutory language, courts routinely dismiss claims against manufacturers premised on theories outside of the LPLA, such as breach of implied warranty.[166] As such, Hallite argues that Hydradyne's claim against Hallite, a manufacturer, for breach of implied warranty of fitness for ordinary use is precluded by the LPLA must be dismissed.[167] In a footnote, Hallite argues in

---

[164] R. Doc. 34-1 at pp. 12–13 (*quoting* La. R.S. 9:2800.52) (internal quotation marks omitted).
[165] R. Doc. 34-1 at p. 13 (*quoting* La. R.S. 9:2800.52) (internal quotation marks omitted).
[166] R. Doc. 34-1 at p. 13 (citing *Aucoin v. Amneal Pharms., LLC*, Civ. A. No. 11-1275, 2012 WL 2990697, at *11–12 (E.D. La. July 20, 2012) (Brown, J.); *Pierre v. Medtronic, Inc.*, Civ. A. No. 17-12196, 2018 WL 1911829, at *14 (E.D. La. Apr. 23, 2018) (Lemelle, J.); *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000), *aff'd*, 243 F.3d 200 (5th Cir. 2001)). The Court notes that the *Pierre* opinion does not have 14 pages, and that the cited language appears on page 5 of the opinion.
[167] R. Doc. 34-1 at p. 1.

the alternative that if Hydradyne's claim is not barred by the LPLA, the claim must be dismissed because a claim for breach of warranty of fitness for ordinary use is a claim for breach of contract and Hydradyne has not alleged that a contract existed between Hydradyne and Hallite.[168]

Hydradyne argues that, like its redhibition claim, its claim for breach of the implied warranty of fitness for ordinary use is not precluded by the LPLA because Hydradyne only seeks the recovery of economic damages.[169]  Hydradyne claims that both the Eastern and Western Districts of Louisiana "have allowed a plaintiff to maintain both a redhibition claim and a claim under the implied warranty of fitness for ordinary use in light of the LPLA."[170]  Hydradyne asserts that in *Cassidy v. Ford Motor Company*, another Section of this Court rejected the arguments made by Hallite and allowed a plaintiff to bring redhibition and breach of warranty claims against a manufacturer.[171]  Hydradyne also cites legal authority from Louisiana federal courts to support its assertion that, "Claims for redhibition and for breach of the warranty of fitness for ordinary use seek recover [sic] for economic loss alone are not barred by the LPLA."[172]

---

[168] *Id.* at p. 13, n. 1 (citing *Sw. Louisiana Hosp. Ass'n v. BASF Constr. Chems., LLC*, 947 F. Supp. 2d 661, 700 (W.D. La. 2013); Revision Comment (b) to La. Civ. Code art. 2524).

[169] R. Doc. 37 at p. 19.

[170] *Id.*

[171] *Id.* (citing *Cassidy v. Ford Motor Co.*, Civ. A. No. 15-2483, 2016 WL 687621, at *3 (E.D. La. Feb. 19, 2016) (Engelhardt, J.)).

[172] R. Doc. 37 at p. 20 (citing *Cassidy*, Civ. A. No. 15-2483, 2016 WL 687621, at *4 (citing *Sw. Louisiana*, 947 F. Supp. 2d at 685); *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, Civ. A. No. 10-4441, 2013 WL 990026, at *4 (E.D. La. Mar. 13, 2013); *Pipitone v. Biomatrix*, 288 F.3d 239, 251 (5th Cir. 2002); *Bladen v. C.B. Fleet Holding Co.*, 487 F. Supp. 2d 759, 764–65 (W.D. La. 2007)).

In response, Hallite asserts that while Hydradyne cited one case to support its position that its implied warranty of fitness claim is not precluded by the LPLA, Hydradyne failed to address binding Fifth Circuit authority that bars such claims.[173] Hallite argues that Hydradyne seems to confuse theories of recovery with damages that are allowed by the LPLA, and points out that the LPLA, La. R.S. 9:2800.52, sets forth the four exclusive theories of recovery against a manufacturer, while La. R.S. 2800.53 sets forth what damages are and are not recoverable under the LPLA.[174] Hallite asserts that breach of the implied warranty of fitness for ordinary use is not a recognized theory of recovery allowed by the LPLA, and that both this Court and the Fifth Circuit have made that clear.[175]

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and specifies that, "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter."[176] The Fifth Circuit has recognized that, "negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA."[177] Both the Eastern and Western Districts of Louisiana have likewise held that under

---

[173] R. Doc. 40 at p. 7 (citing *Grenier v. Med. Eng'g Corp.*, 99 F Supp. 2d 759, 763 (W.D. La. 2000)).
[174] R. Doc. 40 at p. 7.
[175] *Id*.
[176] La. R.S. 9:2800.52.
[177] *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing *Jefferson v. Lead Indus. Assoc.*, 930 F. Supp. 241, 245 (E.D. La. 1996)). *See Jefferson*, 106 F.3d at 1251 ("It is apparent from the foregoing discussion of the exclusivity of the LPLA that plaintiff's allegations of negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness and civil conspiracy fail to state a claim against the lead paint pigment manufacturers under the LPLA and must therefore be dismissed.") (citing authority).

Louisiana law, independent theories of liability premised on strict liability, negligence, or breach of warranty of fitness "are well outside the scope of the LPLA and must be dismissed."[178]

While the LPLA establishes the exclusive theories of liability for manufacturers for damages caused by their products, the Fifth Circuit has recognized that the LPLA, "defines 'damages' by explicitly excluding amounts recoverable under redhibition for damage to the product and other economic loss."[179]  According to the Fifth Circuit, "Courts have interpreted the LPLA as preserving redhibition as a cause of action only to the extent the claimant seeks to recover the value of the product or other economic loss."[180]  As explained by another Section of this Court, "Louisiana courts [] have held that the LPLA provides the exclusive remedy for damages resulting from personal injury and that redhibition articles provide exclusively for economic loss."[181]  Other Sections of this Court have also held that the LPLA does not

---

[178] *Grenier*, 99 F. Supp. 2d at 763 (*citing* La. R.S. 9:2800.52; *Jefferson*, 930 F. Supp. at 243).  *See Pierre v. Medtronic, Inc.*, Civ. A. No. 17-12196, 2018 WL 1911829, at *5 (E.D. La. Apr. 23, 2018) ("Plaintiff's remaining claims for breach of warranty of fitness for ordinary use, negligence, breach of implied warranty, negligent misrepresentation, and negligent design are precluded by the LPLA.  The LPLA sets forth the 'exclusive theories of liability for manufacturers for damage caused by their product.'  La. R.S. 9:2800.52.  'A [plaintiff] may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in th[e] [LPLA].'  *Id.*"); *Baptist v. C.R. Bard, Inc.*, Civ. A. No. 17-12718, 2018 WL 1843937, at *5 (E.D. La. Apr. 17, 2018) (Lemelle, J.) ("Plaintiff's three remaining claims for negligence, breach of warranty of fitness for ordinary use, and breach of implied warranty of merchantability and fitness are precluded by the LPLA."); *Aucoin v. Amneal Pharm., LLC*, Civ. A. No. 11-1275, 2012 WL 2990697, at *5 (E.D. La. July 20, 2012) ("Therefore, under Louisiana law, independent theories of liability premised on strict liability, negligence, or warranty are not viable against a manufacturer, and courts in Louisiana routinely reject actions under these non-LPLA theories.") (citations omitted).

[179] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002) (*quoting* La. R.S. 9:2800.52 and *citing* La. R.S. 9:2800.53(5)) (internal quotation marks omitted).

[180] *Pipitone*, 288 F.3d at 251 (citing *Grenier v. Medical Eng'g. Corp.*, 243 F.3d 200, 206 n.5 (5th Cir. 2001); *Monk v. Scott Truck & Tractor*, 619 So.2d 890, 893 (La. App. 3 Cir. 1993)).

[181] *Brandner v. Abbott Laboratories, Inc.*, Civ. A. No. 10-3242, 2012 WL 195540, at *6 (E.D. La. Jan. 23, 2012) (Vance, J.) (citing authority).

preclude breach of warranty claims because recovery under the LPLA is normally limited to recovery for personal injury and damage to property other than the product itself, while redhibition and breach of implied warranty claims allow the recovery for damage to the product itself or economic loss arising from a deficiency in or loss of use of the product.[182]  The Court notes that Hallite failed to address any of these cases in its Reply brief, despite the fact that Hydradyne cited several of the cases in its Opposition brief.

Based upon the foregoing legal authority, the Court finds that Hydradyne's claim for breach of the implied warranty of fitness for ordinary use is not barred at this stage by the LPLA to the extent that Hydradyne seeks to recover from Hallite the economic losses and damages to the hydraulic cylinders that HGIM seeks in its breach of warranty claim against Hydradyne.[183]  In its Third-Party Complaint, Hydradyne alleges that, "[t]o the extent Hydradyne is found liable for damages to HGIM because the replacement seals [sic] kits manufactured by Hallite were not in fact reasonably fit for their ordinary and intended use, then Hallite is liable to

---

[182] *Cassidy v. Ford Motor Co.*, Civ. A. No. 15-2483, 2016 WL 687621, at *4 (E.D. La. Feb. 19, 2016) (citing *Sw. Louisiana Hosp. Ass'n v. BASF Constr. Chem., LLC*, 947 F. Supp. 2d 661, 685–6 (W.D. La. 2013).  *See Baptist v. C.R. Bard, Inc.*, Civ. A. No. 17-12718, 2018 WL 1843937, at *5 (E.D. La. Apr. 17, 2018) ("A plaintiff may make a claim under the LPLA and in redhibition; however, redhibition is available only to the extent the plaintiff seeks to recover the value of the product or other economic loss.");  *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, Civ. A. No. 10-4441, 2013 WL 990026, at *4-7 (E.D. La. Mar. 13, 2013) (allowing breach of contract claim to proceed because plaintiff did not allege personal injury, meaning that the LPLA's exclusivity provision did not apply); *Mcauslin v. Grinnell Corp.*, Civ. A. No. 97-775, 2000 WL 1655242, at *6 (E.D. La. Nov. 3, 2000) (Vance, J.) (explaining that the LPLA does not preclude claims for "contractual obligations"); *Lavergne v. America's Pizza Co.*, 2002-889, pp.3-4 (La. App. 3 Cir. 2/5/03); 838 So.2d 845, 847–48 (allowing some non-LPLA claims to proceed because, "While the LPLA's exclusivity provision eliminates a general negligence cause of action for damages *caused by a product*, it does not eliminate the liability of a manufacturer for damages *caused by the negligent use of its product* by one of its employees.") (emphasis in original).

[183] *See* R. Doc. 1-2 at pp. 5–6, ¶¶ 34–42 & R. Doc. 21 at pp. 22–23, ¶¶ 31–35.

Hydradyne for all such damages because Hallite manufactured and sold the replacement seal kits . . . ."[184]  In its state court Petition, HGIM asserts a claim for "thing not fit for ordinary use," and seeks recovery from Hydradyne for "loss of revenue, costs of repairs, and costs of replacing the cylinders' defective component parts (the seals) and finding alternative methods of meeting HGIM's production needs."[185]  None of the damages sought by HGIM and, by extension, by Hydradyne are barred by the LPLA.  Accordingly, the Court finds that Hydradyne has alleged a plausible claim against Hallite for breach of the implied warranty of fitness for ordinary use.

To the extent Hallite asserts, in the alternative in a footnote, that Hydradyne's breach of the implied warranty of fitness for ordinary use claim fails because it is "a claim for breach of contract, and Hydradyne has not alleged that a contract existed between Hydradyne and Hallite,"[186] the Court rejects that argument as meritless.  In the case cited by Hallite for this position, *Southwest Louisiana Hospital Association v. BASF Construction Chemicals, LLC,* the Western District of Louisiana quoted language from a Louisiana appellate court decision, which was quoting language from Revision Comment (b) to La. Civ. Code art. 2524, to distinguish between redhibition claims and breach of implied warranty claims brought under Article 2524.[187]  The

---

[184] R. Doc. 21 at p. 23, ¶ 34.

[185] R. Doc. 1-2 at p. 6, ¶ 42.

[186] R. Doc. 34-1 at p. 13, n.1 (citing *Sw. Louisiana*, 947 F. Supp. 2d at 700; Revision Comment (b) to La. Civ. Code art. 2524).

[187] *Sw. Louisiana*, 947 F. Supp. 2d at 699–700 (quoting *Cunard Line Ltd. Co. v. Datrex, Inc.*, 05-1171 (La. App. 3 Cir. 4/5/06), 926 So.2d 109, 113 (*quoting* Revision Comment (b) to La. Civ. Code art. 2524)) (internal quotation marks omitted).

specific language relied upon by Hallite, which is found in Revision Comment (b) to Article 2524, provides the following:

> Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations.  The buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects.[188]

While the court in *Southwest Louisiana* cited the foregoing language in its amended opinion and ultimately concluded that the plaintiff's claim sounded in redhibition rather than breach of the implied warranty of fitness,[189] the court did not vacate its prior finding that a claim for breach of the implied warranty of fitness brought under Article 2524 does not require privity of contract between a buyer and seller.[190]  Both the Eastern and Western Districts of Louisiana have held that a buyer, like Hydradyne, can bring an action against a manufacturer, like Hallite, for breach of the implied warranty of fitness even if there is no privity of contract between the parties.[191]  As such, Hallite has failed to show that Hydradyne's claim for breach of

---

[188] Revision Comment (b) to La. Civ. Code art. 2524.

[189] *See Sw. Louisiana*, 947 F. Supp. 2d at 694–704.

[190] *Id.* at 692–93 (citing *Media Production Consultants, Inc. v. Mercedes-Benz of N. America, Inc.*, 262 So.2d 377, 281 (La. 1972)).  As explained by another Section of this court, "the *BASF* court later amended its opinion in order to strike the affirmative finding that the plaintiff was permitted to assert an article 2524 claim, in addition to an article 2520 claim.  *BASF*, 947 F. Supp. 2d 661 at 701–02. However, the decision to amend was a result of the plaintiff's subsequent failure, on summary judgment, to adduce facts in support of the article 2524 claim, as opposed to a revelation of law. Therefore, the amended opinion does not detract from the court's sound legal analysis." *Cassidy v. Ford Motor Company*, Civ. A. No. 15-687621, 2016 WL 687621, at *3, n.2 (E.D. La. Feb. 19, 2016).

[191] *See Stone Energy Corp. v. Nippon Steel*, 475 F. Supp. 3d 563, 571–76 (W.D. La. 2020) (denying defendant's motion for partial summary judgment and finding that plaintiff, who purchased pipe from defendant through an intermediary seller, "is entitled to pursue all its Civil Code warranties" including breach of the implied warranty of fitness under La. Civ. Code art. 2524); *Cassidy*, Civ. A. No. 15-687621, 2016 WL 687621 (denying defendant-manufacturer's motion to dismiss several claims, including plaintiff's implied warranty claim under La. Civ. Code art. 2524, where plaintiff purchased the vehicle through an intermediary dealership); *Dawson Farms, LLC v. BASF Corp.*, Civ. A. No. 06-

the implied warranty of fitness for ordinary use fails due to lack of contractual privity between Hydradyne and Hallite.

### 3. **Hydradyne's Detrimental Reliance Claim**

Hallite asserts that Hydradyne has no cause of action for detrimental reliance and that the claim should be dismissed because it is not one of the four theories of recovery recognized by the LPLA.[192]  In a footnote, Hallite asserts, in the alternative, that if the claim is not barred by the LPLA, the claim still fails "because no contract existed between Hydradyne and Hallite, and detrimental reliance claims are limited to contracting parties."[193]

Hydradyne asserts that it has stated a plausible detrimental reliance claim because it alleged that it reasonably relied on Hallite's holding itself out as an expert and representing that it was selling manufactured replacement parts that were functionally equivalent to the original seals for the hydraulic cylinders.[194]  Hydradyne contends that it alleged in its Third-Party Complaint that it relied to its detriment on Hallite's representations and is entitled to recover damages from Hallite to the extent that HGIM prevails on its claims against Hydradyne.[195]   Hallite claims that

---

0737, 2008 WL 2222214, at *5 (W.D. La. May 16, 2008) (James, J.) (citing *In re Gas Water Heater Products Liability Litigation*, Civ. A. No. 96-2484, 1996 WL 732525, at *4 (E.D. La. Dec. 12, 1996) (Duval, J.)) ("A buyer can bring an action against a manufacturer for breach of the implied warranty of fitness, even if there is no privity of contract between the parties."); *In re Gas Water Heater*, Civ. A. No. 96-2484, 1996 WL 732525 at *3 ("By its text, Article 2524 clearly holds sellers liable. Manufacturers may also be held liable for breach of the warranty of fitness.") (citing *Media Production Consultants*, 262 So.2d at 281 (applying La. Civ. Code articles 2475, 2476).

[192] R. Doc. 34-1 at p. 14.

[193] *Id.* at n.2 (citing *Magic Moments Pizza, Inc. v. Louisiana Rest. Ass'n*, 02-160 (La. App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149; *River Par. Contractors, Inc. v. Black Diamond Cap. Mgmt. LLC*, Civ. A. No. 22-723, 2024 WL 3066623, at *6, n.6 (E.D. La. June 20, 2024) (Zainey, J.)).

[194] R. Doc. 37 at pp. 20–21.

[195] *Id.* at p. 21.

a claim for detrimental reliance in Louisiana requires a representation, justifiable reliance on the representation, and a change in position to one's detriment due to the reliance, and asserts that all three requirements are met in this case.[196] Alternatively, if the Court concludes that any portion of Hydradyne's Third-Party Complaint must be re-pled under the LPLA, including its detrimental reliance claim, Hydradyne requests leave to amend its Petition to assert its claims under the LPLA.[197]

In response, Hallite asserts that Hydradyne's Opposition brief merely recites the elements of detrimental reliance, but fails to address whether a claim for detrimental reliance is barred by the exclusivity provision of the LPLA.[198]

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[199]  However, "[r]eliance on a gratuitous promise made without required formalities is not reasonable."[200]  Thus, "[t]o establish a claim for detrimental reliance, a party must prove three elements: (1) a representation by conduct or word; (2) justifiable reliance on the representation; and (3) a change in position to one's detriment resulting from the reliance."[201]  According to the Fifth Circuit, "[t]he doctrine of [detrimental reliance] is designed to prevent injustice by barring a party from taking a position

---

[196] *Id*. at pp. 21–22 (citing *Cenac v. Orkin, LLC*, 941 F.3d 182, 197–98 (5th Cir. 2019)).
[197] R. Doc. 37 at p. 22.
[198] R. Doc. 40 at p. 8.
[199] La. Civ. Code art. 1967.
[200] *Id*.
[201] *Cenac*, 941 F.3d at 198 (citing *Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004)).

contrary to his prior acts, admissions, representations, or silence."[202]   The Fifth Circuit has recognized that, "[u]nder Louisiana law, 'the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promise to rely upon it, and whether the promisee so relies to his detriment.'"[203]   "Louisiana does not favor recovery under a detrimental-reliance theory."[204]   Like the Louisiana Supreme Court, the Fifth Circuit has observed that, "detrimental reliance claims are generally limited to situations in which a *promisor* makes a promise to a *promisee*."[205]

For the same reasons the Court determined that the LPLA's exclusivity provision does not bar Hydradyne's breach of implied warranty claim, the Court likewise finds that the LPLA does not bar Hydradyne's detrimental reliance claim to the extent Hydradyne seeks to recover from Hallite the economic losses and damages caused to HGIM's hydraulic cylinders by the Hallite-manufactured seals.   To the extent that Hallite argues, in the alternative, that the detrimental reliance claim fails due to lack of privity between Hallite and Hydradyne, the Court is not persuaded by the two cases cited by Hallite that "detrimental reliance claims are limited to

---

[202] *Cenac v. Orkin, LLC*, 941 F.3d 182, 197–98 (5th Cir. 2019) (quoting *Drs. Bethea,* 376 F.3d at 403) (internal quotation marks omitted).

[203] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 254 (5th Cir. 2008) (quoting *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459 (La. 2005), 907 So.2d 37, 59).

[204] *McCleery v. Speed*, Case No. 22-30213, 2023 WL 1099149, at *2 (5th Cir. Jan. 30, 2023) (quoting *Koerner v. CMR Constr. & Roofing, LLC,* 910 F.3d 221, 232 (5th Cir. 2018)) (internal quotation marks omitted).

[205] *McCleery*, Case No. 22-30213, 2023 WL 1099149 at *2 (citing *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007); *Suire,* 2004-1459 , 907 So.2d at 59) (emphasis in original).

contracting parties."[206]    In fact, both of the cases cited by Hallite to support its position explicitly recognize that there are scenarios in which detrimental reliance claims can be brought by third parties.[207]

The Court turns to whether Hydradyne has stated a claim for detrimental reliance against Hallite.    It is unclear from the Complaint what representations, if any, Hallite purportedly made, and to whom, regarding the replacement seals. Hydradyne has alleged in the Third-Party Complaint that, "[t]hrough Louisiana Seals, Hydradyne arranged for delivery of the original seal and band components, which Hydradyne had removed from the Hunger cylinders, to Hallite, so that Hallite could evaluate the OEM seal components and manufacture suitable and compatible replacement parts for installation by Hydradyne in the Hunger cylinders."[208] Hydradyne also alleges that, "Hallite agreed to manufacture suitable and compatible replacement parts for the Hunger cylinders and supplied the parts it manufactured to Louisiana Seals, for sale to Hydradyne for use in Hydradyne's service work on the HGIM Hunger hydraulic cylinders."[209]  Hydradyne further alleges that it "reasonably relied on Hallite's holding itself out to the public as an expert . . . fully qualified and

---

[206] R. Doc. 34-1 at p. 14, n.2.

[207] *See Magic Moments Pizza, Inc. v. Louisiana Rest. Ass'n*, 02-160 (La. App. 5 Cir. 5/29/02), 819 So.2d 1146, 1149–50 (finding that "contractual cause of actions based upon detrimental reliance apply only to contracting parties, and not to third parties," but ultimately concluding that, "there are unresolved issues concerning Magic Moments' status as a third party, *or the contracting party being represented by LRA*") (emphasis added); *River Par. Contractors, Inc. v. Black Diamond Cap. Mgmt. LLC*, Civ. A. No. 22-723, 2024 WL 3066623, at *6, n.6 (E.D. La. June 20, 2024) (finding that, "Louisiana's detrimental reliance statute requires that the promise be made from the defendant promisor to the plaintiff promisee," but ultimately concluding that "this Court is satisfied that the promise must have run from [defendant] to [plaintiff], *whether expressly or through an agent*.") (emphasis added).

[208] R. Doc. 21 at p. 18, ¶ 11.

[209] *Id.*

capable to produce replacement seals [sic] kits for the HGIM Hunger hydraulic cylinders that would function and perform in a manner equivalent to the OEM . . . Hunger seals [sic] kits for the cylinders."[210]    Hydradyne alleges that it also "reasonably relied on Hallite's representations of its expertise and ability to deliver replacement seals [sic] kits that would function and perform equivalently to OEM Hunger seals kits for the hydraulic cylinders in question."[211]    The Third-Party Complaint, however, is devoid of any allegations regarding the actual representations made by Hallite, and whether Hallite made those representations to Louisiana Seals or to Hydradyne through Louisiana Seals.  Because it is unclear whether a promise was made by Hallite and to whom that promise was made, the Court finds that the Third-Party Complaint fails to state a claim for detrimental reliance.

### C. Leave to Amend

In its Opposition brief, Hydradyne asserts that, "if this Court finds that the detrimental reliance claim must be pled under the LPLA, then Hydradyne seeks leave to amend to allege claims under the LPLA, in addition to the redhibition and breach of implied warranty claim."[212]    While the Court has not concluded that Hydradyne must re-plead its detrimental reliance claim under the LPLA, it has determined that the Complaint fails to allege adequate facts to state a claim for detrimental reliance.  The Court will "freely give leave [to amend] when justice so

---

[210] *Id*. at p. 24, ¶ 37.

[211] *Id*. at ¶ 38.

[212] R. Doc. 37 at p. 3.  *See Id*. at p. 22 ("Alternatively, if this Court concludes that any aspect of the Third Party Complaint, including but not limited to the detrimental reliance claim, must be re-pled under the Louisiana Products Liability Act, then Hydradyne seeks leave to amend to re-plead any such claims under the LPLA.").

requires," but leave to amend "is by no means automatic."[213]   In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[214]   "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[215]

There is no indication in this case that Hydradyne has acted in bad faith, with a dilatory motive, or that it has caused undue delay in this matter by requesting leave to amend.   Further, Hydradyne has not previously amended its Third-Party Complaint, and Hallite has not alleged that granting Hydradyne leave to amend would cause undue prejudice.[216]   As such, the Court finds it appropriate to grant Hydradyne's request for leave to amend its Third-Party Complaint to address the deficiencies raised by Hallite with respect to its detrimental reliance claim. Hydradyne shall have fourteen (14) days to file an amended Third-Party Complaint addressing the deficiencies raised as to the sufficiency of its detrimental reliance claim.   If Hydradyne fails to amend its Third-Party Complaint within that time, the Court will dismiss with prejudice Hydradyne's detrimental reliance claim in accordance with this Order and Reasons.

---

[213] Fed. R. Civ. P. 15(a); *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).

[214] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

[215] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[216] *See* R. Doc. 12.

IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Hallite Seals Americas, LLC's Motion to Dismiss Third-Party Complaint of Hydradyne, LLC[217] is **GRANTED, in part,** as to Hydradyne's detrimental reliance claim, and otherwise **DENIED.**

**IT IS FURTHER ORDERED,** however, Hydradyne, LLC shall have **fourteen (14) days** from the date of this Order to file an amended Third-Party Complaint that addresses the deficiencies addressed by the Court regarding the sufficiency of its detrimental reliance claim.  If Hydradyne fails to timely file an amended pleading, the Court will issue an order dismissing with prejudice its detrimental reliance claim against Hallite Seals Americas, LLC.

New Orleans, Louisiana, March 27, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[217] R. Doc. 34.